No. 20,669.

THE STATE OF KANSAS, *Appellant*, v. THE MIDLAND AERIE NO. 412, FRATERNAL ORDER OF EAGLES, *Appellee*.

No. 20,670.

THE STATE OF KANSAS, *Appellant*, v. THE CANEY AERIE NO. 1000, FRATERNAL ORDER OF EAGLES, *Appellee*.

No. 20,671.

THE STATE OF KANSAS, *Appellant*, v. THE INDEPENDENCE LODGE, NO. 780, BROTHERHOOD PROTECTIVE ORDER OF ELKS, *Appellee*.

No. 20,672.

THE STATE OF KANSAS, *Appellant*, v. THE CANEY LODGE, NO. 1215, BROTHERHOOD PROTECTIVE ORDER OF ELKS et al., *Appellees*.

The State v. Order of Eagles.

SYLLABUS BY THE COURT.

LIQUOR NUISANCE — *Fraternal Orders* — *Nuisance Abated* — *Injunction.*
Where a fraternal organization periodically permits intoxicating
liquors to be brought upon its premises and permits its members to
gather thereat for the purpose of drinking such liquors, its premises
thereby become a nuisance which may be enjoined and abated; but
where the officers and members of such organization are notified by
the responsible public officers to quit such practices under threat of
prosecution, and they do quit in apparent good faith and remove all
liquor paraphernalia from their premises, the lodge and its property
can not be subjected to an injunction as an existing nuisance in a
suit commenced after the offensive practices have been definitely and
permanently abandoned.

Appeals from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed October 7, 1916. Affirmed.

*S. M. Brewster,* attorney-general, *James P. Coleman,* assis-
tant attorney-general, and *Charles D. Ise,* county attorney, for
the appellant.

*Thomas E. Wagstaff, J. B. Tomlinson,* both of Independ-
ence, and *George H. Wark,* of Caney, for the appellees; *Charles
D. Shukers,* of Independence, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This is a consolidation of four appeals. The
state, through its county attorney in Montgomery county, filed
four suits charging that the defendants, which are certain
social fraternities in Caney and Independence, were keeping
liquor nuisances on their respective premises at the time of the
filing of the suits, and that such nuisances had been so kept and
maintained for some time prior thereto.

The state's evidence showed that periodically, usually once a
week, once in two weeks, or once a month, the members of these
lodges, or some of them, held so-called social sessions, at which
intoxicating liquors were produced and drank and the partici-
pating members paid a small sum to meet the expenses. It was
shown, however, by ample testimony that the lodge members
and their officers had been warned to quit, and threatened with
prosecutions unless they did quit, and that they had also such
persuasive notice of the state's attention being directed toward
their conduct as a deliberate and searching inquisition by the

county attorney might be expected to give. This evidence was developed on the examination and cross-examination of the state's witnesses. It also was shown that these warnings were not without effect, and that from one to three weeks before the state's suits were filed the defendant lodges and their officers and members determined to abandon these social or drinking sessions, and that they did abandon them and cleaned out all their paraphernalia pertaining to these drinking sessions; and it was solemnly avowed that these reformations had been undertaken in good faith, as a permanent course of conduct, and with no intention to lapse into lawlessness hereafter.

On this showing, a demurrer to the state's evidence was sustained and the state appeals.

We need not discuss the technical question whether judgment was properly rendered on the demurrer. There is no doubt that where a lodge society or fraternity periodically or occasionally permits the drinking of beer or other intoxicants upon its premises it violates the law, and every officer or member responsible for this state of affairs is liable to criminal prosecution, and the premises are a nuisance which the state may have enjoined as a matter of its sovereign right. Indeed, the state may have a temporary injunction against such premises for the asking, and the details of evidence necessary to secure a permanent injunction may be gleaned by a county attorney's inquisition or otherwise after the suit for an injunction is filed. But where the public officers proceed as they did here, giving the defendants an opportunity to quit before filing suits for injunctions, and where the evidence shows that they did quit and cleaned up their premises, manifestly no nuisances in need of injunction or abatement existed when the state's cases were started; and so, for the time being, injunctions can not issue. If the evidence touching the sincerity and permanency of the defendants' reformation is not true, it will be no trouble for the state to commence anew. Meantime the district court's judgment must be affirmed.